# IN THE TWENTY-FIRST JUDICIAL CIRCUIT
# STATE OF MISSOURI

| | |
|---|---|
| JIMMIE ALLEN, RANIA ALLEN & MARCUS ALLEN, <br><br> Petitioners, <br><br> v. <br><br> CITY OF FERGUSON, MISSOURI, OFFICER BROWN (DSN 591), OFFICER BAKER (DSN 581), & LT. BALLARD, <br><br> Respondents. | Cause No: _____ <br><br> Division No: _____ <br><br> JURY TRIAL DEMANDED <br><br> **10** |

## PETITION

COME NOW Petitioners by and through counsel, Rufus J. Tate, Jr., and state the following for their Petition:

*Parties*

1) Petitioner Jimmie Allen ("Father") at all pertinent times herein was an African-American male;

2) Petitioner Rania Allen ("Mother" or "Wife") at all pertinent times herein was an African-American female;

3) Petitioner Marcus Allen ("Son") at all pertinent times herein was an African-American male;

4) Respondent City of Ferguson, Missouri ("City") at all pertinent times herein was a municipality located in St. Louis County, Missouri;



5) Respondent Officer Baker ("Baker") at all pertinent times herein was acting under color of law as a City police officer, and is being sued in his individual and official capacities;

6) Respondent Officer Brown ("Brown") at all pertinent times herein was acting under color of law as a City police officer, and is being sued in his individual and official capacities;

7) Respondent Lt. Ballard ("Ballard") at all pertinent times herein was acting under color of law as the supervisory City police officer with policy-making authority, and is being sued in his individual and official capacities;

*Venue*

8) Venue is appropriate in this judicial circuit because all acts or omissions complained of occurred herein;

*Subject-Matter Jurisdiction*

9) This Court has subject-matter jurisdiction over the claims herein pursuant to MO Const. art. V, § 14;

*Common Factual Allegations*

10) On April 21, 2011, Respondents served on some sort of fugitive apprehension team within the City police department;

11) Respondents somehow became aware of a "wanted" or "wanted for questioning" concerning Marcus Allen, Petitioner's son ("Son"). The "wanted"—not "warrant"-- had apparently been broadcast by the City of Berkeley, Missouri;

12) Prior to April 21, 2011, the City police department had routinely conducted door-to-door searches and warrantless residential arrests based solely upon knowledge of another municipality's "wanted" or "wanted for questioning";

13) Prior to April 21, 2011, the City never required City police officers to physically obtain any arrest warrant, search warrant, or other document previously signed and executed by any federal judge or magistrate, circuit judge, or associate circuit judge before seeking to apprehend any individual who was merely "wanted" or "wanted for questioning";

14) Prior to April 21, 2011, Respondents had no reason to believe that any judicially-approved warrant had been actually issued for Son's arrest;

15) Prior to April 21, 2011, Respondents had no reason to believe that any judicially-approved warrant had been actually issued for the search of Son's residence;

16) On April 21, 2011, Respondents approached Father's residence on Lake Pembroke in the City of Ferguson;

17) On April 21, 2011, Respondents certainly did not have physical possession of any reason to believe that any judicially-approved warrant had been actually issued for the search of Father's residence;

18) Respondents were not in hot pursuit of Son when they approached Father's residence;

19) Respondents observed Son exit from the garage and enter into Father's residence;

20) Peering through a window, Respondents observed Son inside Father's residence before knocking to request entry;

21) At no time did Respondents observe Son to call out to his Father or otherwise observe Father and Son acknowledge or interact with one another on April 21, 2011;

3

22) On April 21, 2011, Respondents never observed Father and Son in the same room. Respondents never observed the interior lights on at such a time that Father would necessarily have noticed Son's presence in the house;

23) When Respondents knocked on the front door, Father promptly responded to the knock;

24) When Respondents requested entry to search for Son, Father advised Respondents that to his knowledge Son was not present therein;

25) When Respondents requested to search the residence, Father asked if Respondents had a "warrant"—not a "wanted";

26) Respondents lied and asserted that they possessed a "warrant";

27) Based upon Respondents' misrepresentation or lie, Father allowed Respondents to enter into the residence to conduct a search for Son;

28) Respondents failed to ever produce either an arrest warrant or a search warrant sanctioned under the Fourth Amendment to the US Constitution;

29) Upon entry, Respondents did not handcuff or otherwise sequester Father before conducting their search because they perceived Father as cooperative;

30) When Respondents located Son in the residence, they found him half-clothed and on his knees submitting to Respondents' alleged authority;

31) Respondents never observed any weapon or other item which might remotely be construed as a weapon in either of Son's hands;

32) Son did not lay flat on the floor as order by Ballard;

33) Although Ballard and Baker were within arms-length of Son, neither Respondent attempted to touch or handcuff Son before tasering Son twice;

34) Son did not exert any physical force by merely refusing to lie flat on the floor.

35) Only after inflicting excruciating and unnecessary force did Respondents attempt to handcuff Son;

36) Neither Respondent ever alleged that Son utilized or threatened to utilize any physical force against or in resistance to either Respondent on April 21, 2011;

37) Father witnessed the unnecessary and excessive force utilized against his Son by Baker in Ballard's physical presence;

38) Only after Father voiced concern did Brown announce that Father was under arrest for the municipal infraction of "Hindering Prosecution" for allegedly "[l]ying about his son actually being inside of the residence.";

39) Brown ignored Father's obvious deformity in his right hand and arm, and pulled it with such force in attempts to handcuff Father as to cause unbearable pain requiring Father to later report to Christian Northeast Hospital;

40) Respondents removed Father (DAV, age 60) from his home in pajamas on a cold, rainy night;

41) Wife observed the dehumanizing perp-walk to the waiting City police vehicle(s);

42) Ballard, Baker, and Brown acted with "conscious wrongdoing" because prior to April 21, 2011, they each knew that warrantless residential searches were presumptively unlawful, and misrepresented their possession of a search warrant to deprive Father of his right to require production of a warrant before entry into a residence;

43) Father was subsequently acquitted at trial in November 2013;

44) City dropped the charge against Son in November 2013;

45) Father and Son incurred damages including, but not limited to, anxiety, stress, humiliation, and foreseeable attorney's fees of $1,000 in the criminal prosecution;

46) At all pertinent times herein, Respondents were acting pursuant to municipal "custom" or "policy";

47) Upon information and belief, the City had notice prior to April 21, 2011, of (i) similar City warrantless entries into residences to conduct a search, (ii) failure to utilize City-approved Consent to Search forms, (iii) failure to obtain any written consent prior to warrantless entry in residences to conduct a search, (iv) fabrication of alleged oral consent when warrantless residential searches are questioned or challenged, and/or (v) warrantless residential searches in the absence of any reasonable basis to believe that anyone inside required or requested emergency assistance from the City police;

48) The City ratified Respondents' lawless behavior by (i) failing to discipline either respondent for lying about the existence of a search warrant, (ii) failing to require a City Consent to Search form be executed prior to execution of an alleged oral consent to search in the absence of an emergency or hot pursuit, (iii) tasering an unarmed individual who posed no actual threat to either Respondent or anyone else at that moment, (iv) pursuing baseless criminal charges against Father in light of the admissions in the police report and trial testimony that Father had cooperated with City police, and (v) failing to require City police officers to obtain search warrants in accordance with the Fourth Amendment prior to entering a residence in the absence of an emergency or hot pursuit;

49) City waived its sovereign immunity by purchasing an applicable policy of liability insurance;

50) Petitioners have incurred and shall continue to incur foreseeable attorney's fees to prosecute this civil action;

## Count I
## Warrantless Entry & Search

Each Petitioner incorporates by reference each of the foregoing factual allegations as though fully restated herein and states the following for their petition for a Warrantless Entry and Search:

51) It is well established that the Fourth and Fourteenth Amendments prohibit any City police officer acting under color of law from entering a residence without a "search warrant";

52) Respondents did not possess such a search warrant before entering Father's residence;

53) Respondents lied to Father about their alleged possession of a search "warrant" in order to gain entry into Father's residence;

54) Alternatively, prior to April 21, 2011, the City erroneously trained its police officers that a "wanted" was the equivalent of a "search warrant" for purposes of entering a residence;

55) Alternatively, prior to April 21, 2011, City allowed City police officers to rely upon a mere "wanted" to conduct a warrantless residential search and seizure;

56) By lying about or misrepresenting the existence of a search warrant, Respondents deprived Father of his constitutional right to demand the production of a duly-authorized search warrant before permitting City police officers to enter his residence;

57) At all pertinent times herein, Ballard observed the lie and/or misrepresentation about the existence of a search warrant, and knew that the other Respondents had mislead Father into believing they had a duly-authorized search warrant in their possession;

58) Each Respondent knew that such lies or misrepresentations violated Petitioners' Fourth Amendment rights;

59) Ballard failed to request written consent to search from either Petitioner;

60) Respondents failed to intervene to protect the knowing violation of Petitioners' Fourth Amendment rights by permitting or encouraging Baker or Brown to intentionally mislead Father about their possession of a search warrant;

61) Ballard failed to take any remedial corrective action to protect Petitioner's Fourth Amendment rights in light of his personal observations;

62) Respondents' lies, misrepresentations or omissions about the existence of a search warrant reflect a callous disregard of Petitioners' constitutionally-protected rights against warrantless residential searches and seizures; and warrant the imposition of punitive damages to punish and deter similar misconduct in the future;

63) The City has not taken any corrective remedial action to eradicate similar, future warrantless residential searches or seizures;

For all of the foregoing reasons, Jimmie Allen, Rania Allen, and Marcus Allen respectfully request judgment in their favor and joint and several liability against Brown, Baker, Ballard, and the City of Ferguson as follows:

A) An Order preliminarily and permanently enjoining the City's misrepresentation of a "wanted" as the equivalent of a duly-authorized "search warrant" under the Fourth Amendment;

B) An Order appointing Rufus J. Tate, Jr., as compliance monitor over the City of Ferguson's warrantless residential entry practices and procedures for a period of five (5) years or until such time as the Court determines that the City of Ferguson has fully and effectually trained all of its police officers on the constitutional requirements of entry into a residence in order to conduct a search or investigation;

C) Compensatory damages as is fair and reasonable under the circumstances, including collateral litigation attorney's fees;

D) Punitive damages as is fair and reasonable under the circumstances;

E) Attorney's fees and costs in accordance with 42 U.S.C. § 1988; and

F) Whatever other relief this Court deems necessary and appropriate under the circumstances;

## Count II
## Unlawful Arrest

Jimmie Allen and Marcus Allen incorporate by reference each of the foregoing factual allegations as though fully restated herein and state the following for their petition for Unlawful Arrest:

64) Brown arrested Father for the alleged municipal infraction of "Hindering Prosecution";

65) At the time of the arrest, Brown had no (arguable) probable cause to believe that Father purposefully:

   a. Harbored or concealed Son from Respondents; or

   b. Warned Son impending discovery or apprehension;

c. Provided Son with money, transportation, weapon, disguise or other means to aid Son in avoiding discovery or apprehension by Respondents; or

d. Prevented or obstructed, by means of force, deception or intimidation, Respondents from performing an act that might aid in the discovery or apprehension of such person;

66) Baker arrested Son for the alleged municipal infraction of "Resisting Arrest";

67) Baker did not observe Son commit any offense in his presence or receive any report from either of the other Respondents that they might have witnessed Son commit any offense in their presence;

68) At the time of the arrest, Baker had no (arguable) probable cause to believe that Son used or threatened the use of physical force against any Respondent in response to his directive to lay flat on the floor. *See, e.g., State v. Caldwell*, 352 S.W.3d 378, 384 (Mo. App. 2011);

69) Ballard personally witnessed the announcement and effectuation of each arrest by Baker and/or Brown;

70) Respondents knew or should have known that Brown lacked arguable probable cause to arrest Father for Hindering Prosecution, and that the arrest thereby violated the Fourth Amendment's prohibition against unreasonable seizures;

71) Respondents knew or should have known that Baker lacked arguable probable cause to arrest Son for Resisting Arrest, and that the arrest thereby violated the Fourth Amendment's prohibition against unreasonable seizures;

72) Respondents could have prevented the unlawful arrests but chose not to do so. Instead, Ballard authorized or encouraged the arrests in the absence of arguable probable cause;

73) Respondents' actions in the absence of arguable probable cause reflect a callous disregard of Father and Son's constitutionally-protected rights against unreasonable seizures, and warrant the imposition of punitive damages to punish and deter similar misconduct in the future;

74) The City has not taken any corrective remedial action to eradicate similar instances of arrests for Hindering Prosecution and/or Resisting Arrest in connection with warrantless residential searches and seizures;

For all of the foregoing reasons, Jimmie Allen and Marcus Allen respectfully request judgment in their favor and joint and several liability against Brown, Baker, Ballard, and the City of Ferguson as follows:

A) Compensatory damages as is fair and reasonable under the circumstances, including collateral litigation attorney's fees;

B) Punitive damages as is fair and reasonable under the circumstances;

C) Attorney's fees and costs in accordance with 42 U.S.C. § 1988; and

D) Whatever other relief this Court deems necessary and appropriate under the circumstances;

### Count III
### Malicious Prosecution

Jimmie Allen incorporates by reference each of the foregoing factual allegations as though fully restated herein and states the following for his petition for Malicious Prosecution:

75) Respondents instigated or continued the prosecution of Father for Hindering Prosecution;

76) As more fully described in par. 59, above, Respondents lacked probable cause to support the criminal charges;

77) Respondents acted with malice where they arrested Father only because he complained about the unnecessary tasering of his son;

78) Father suffered damages including, but not limited to, compulsion to attend all court proceedings for nearly two years, attorney's fees, medical bills incurred in connection with medical consultation for pain inflicted by Brown;

79) Father was acquitted at trial;

80) Ballard and Baker knew that Brown's arrest for Hindering Prosecution was baseless;

81) Ballard and Baker could have intervened to prevent Father's arrest;

82) Ballard and Baker authorized or encouraged Father's arrest;

83) Respondents' actions reflect a callous disregard for Father's constitutionally protected rights against unreasonable seizure, and warrant the imposition of punitive damages to punish and deter similar misconduct in the future;

For all of the foregoing reasons, Jimmie Allen respectfully requests judgment in his favor and joint and several liability against Brown, Baker, Ballard, and the City of Ferguson as follows:

A) Compensatory damages as is fair and reasonable under the circumstances, including collateral litigation attorney's fees;

B) Punitive damages as is fair and reasonable under the circumstances;

C) Attorney's fees and costs in accordance with 42 U.S.C. § 1988; and

D) Whatever other relief this Court deems necessary and appropriate under the circumstances.

## Count IV
## Loss of Consortium

Rania Allen incorporates by reference each of the foregoing factual allegations as though fully restated herein and states the following for her petition for Loss of consortium:

84) At all pertinent times herein, Jimmie and Rania Allen were legally married to one another and residing together as husband and wife;

85) On April 21, 2011, Jimmie Allen sustained injuries as a direct result of the negligence of one or more Respondents resulting in the deprivation of his Fourth Amendment rights (warrantless residential search, unreasonable arrest);

86) Because of the injuries Respondents inflicted upon her husband, Wife sustained damages, including but not limited to: Father suffered bouts of sleeplessness and restless, Father suffered bouts of anger watching uniformed officers torture his son, Father suffered bouts of feelings of anxiety and humiliation because he was unable to reason with Respondents before they tortured his son, Father has developed a preoccupation with the unlawful use of force inflicted on his Black child.

For all of the foregoing reasons, Rania Allen respectfully requests judgment in her favor and joint and several liability against Brown, Baker, Ballard, and the City of Ferguson as follows:

A) Compensatory damages as is fair and reasonable under the circumstances, including collateral litigation attorney's fees;

B) Punitive damages as is fair and reasonable under the circumstances;

C) Attorney's fees and costs in accordance with 42 U.S.C. § 1988; and

13

D) Whatever other relief this Court deems necessary and appropriate under the circumstances.

## Count V
## Malicious Trespass

Jimmie and Rania Allen incorporate by reference each of the foregoing factual allegations as though fully restated herein and state the following for her petition for Malicious Trespass pursuant to § 537.330 RSMo:

87) By lying to Father in order to conduct a warrantless search and seizure, Respondents interfered with Jimmie and Rania Allen's intangible property without consent or license;

88) Respondents "maliciously or wantonly damaged or destroyed" Petitioners' property rights and interests; and

89) Petitioners suffered injury and damage as more fully outlined above.

For all of the foregoing reasons, Jimmie & Rania Allen respectfully request judgment in their favor and joint and several liability against Brown, Baker, Ballard, and the City of Ferguson as follows:

A) A Declaration that City police officers' knowledge of a "wanted" is not possession of a "warrant" for purposes of conducting a warrantless residential search and seizure;

B) An Order preliminarily and permanently enjoining the City of Ferguson, its employees, agents or those working in concert with it from misrepresenting their knowledge of a "wanted" as possession of a "warrant";

C) Double damages, including collateral litigation attorney's fees, in accordance with § 537.330 RSMo;

D) Punitive damages as is fair and reasonable under the circumstances;

E) Attorney's fees and costs in accordance with 42 U.S.C. § 1988; and

F) Whatever other relief this Court deems necessary and appropriate under the circumstances.

Respectfully submitted,

THE TATE LAW FIRM, LLC

/s/ Rufus J. Tate, Jr.
Rufus J. Tate, Jr. 46993
7751 Carondelet, Suite 803
Clayton, MO 63105
314.726.6495 Office
314.726.0424 Fax
tatelawfirm@gmail.com
*Counsel for Petitioners Jimmie Allen, Rania Allen & Marcus Allen*
